**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

PENNY J. SEWARD                                                                                    PLAINTIFF

v.                                              No. 4:05CV01373 JLH

R. JAMES NICHOLSON, Secretary,
Department of Veterans Affairs                                                                 DEFENDANT

**OPINION AND ORDER**

Penny Seward brings this suit pro se under Title VII against her employer, R. James

Nicholson, Secretary of the Department of Veterans Affairs, alleging sex discrimination. According

to Seward, the Veterans Administration's facility in North Little Rock ("VA") allowed males to

apply for higher-graded positions using their veteran's status but failed to allow her to use her

veteran's status when applying for higher-graded positions. As a result, Seward alleges that she was

not promoted as quickly as she would have been absent the discrimination. Seward seeks promotion

to a grade eleven position retroactive to January 1, 1999. Nicholson has moved for summary

judgment. For the following reasons, that motion is granted.

**I.**

A court should enter summary judgment when "the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter

of law." FED. R. CIV. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.

Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986). A genuine issue exists only if there is sufficient evidence

to allow a jury to return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 249, 106 S. Ct.

at 2511. In deciding a motion for summary judgment, the Court views the facts in the light most

favorable to the nonmoving party and draws all inferences in his favor, mindful that summary

judgment seldom should be granted in discrimination cases where claims are often based on inferences. *Peterson v. Scott County*, 406 F.3d 515, 520 (8th Cir. 2005); *Bassett v. City of Minneapolis*, 211 F.3d 1097, 1099 (8th Cir. 2000) (collecting cases). *But see Bainbridge v. Loffredo Gardens, Inc.*, 378 F.3d 756, 762 (8th Cir. 2004) (Arnold, J., dissenting).

## II.

Seward is a twenty-year veteran of the Air Force.  In 1999, Seward applied to the VA using her veteran's status.[1]  The VA can fill available positions in one of two ways.  First, it can hire applicants outside the VA using the Delegated Examining Unit, run by the Office of Personnel Management, the federal government's human resources agency.  When the VA uses this hiring process, it can give a noncompetitive temporary appointment to any applicant with veteran's status.  After the temporary appointment expires, the agency may convert the employment of the applicant with veteran's status to a career or career-conditional appointment.

Second, the VA can fill a position by promoting VA employees using the Merit Promotion Plan.  To be eligible for merit-promotion positions, employees must meet the time-in-grade requirements for those positions.  A merit-promotion position generally requires at least one year of experience at the next lowest grade.  Employees can bypass these time-in-grade requirements by using their veteran's status to apply for merit-promotion positions.  Employees applying to merit-promotion positions using their veteran's status, however, go outside the Merit Promotion Plan and are treated as if they are outside applicants.  If promoted, they have to serve another probationary period during which they can be more easily terminated.

---

[1] For purposes of this Opinion and Order, the term "veteran's status" refers to either 30% disabled veteran's status or veteran's status under the Veterans Recruitment Appointment.  The technical differences between the 30% disabled veteran's status and the VRA are not of any concern to the issues in this case.

The VA hired Seward on August 29, 1999, on a provisional basis as a grade five patient services assistant. The form confirming her hiring stated that Seward could be converted to a nontemporary appointment before her provisional appointment expired. On July 16, 2000, Seward was reassigned to human resources as a staffing assistant, a grade five position that was not provisional and had promotion potential. Seward became a grade six on November 5, 2000, and on February 15, 2001, Seward was promoted to a grade seven personnel management specialist. Seward was promoted on February 24, 2002, to a grade nine human resources specialist, the position she currently holds. Additionally, Seward became a grade eleven in February of 2003.

During the time period that Seward received those promotions, Seward applied for four other merit-promotion positions within the VA. At some point when Seward was applying for these four positions, she spoke to Linda Dunlap, a VA staffing assistant, about the possibility of using her veteran's status to apply. Dunlap told Seward that she could not use her veteran's status and had to meet the time-in-grade requirements for any higher-graded positions to which she was applying.

Seward was qualified for the first position, a grade five medical records tech, but Seward rejected it because "it was going to be on the other side." On January 5, 2000, Seward applied for a grade six program support assistant position that required a year of experience in grade five. Seward only had five months in grade five and did not indicate anywhere on her application that she was applying for the position using her veteran's status. Seward was rejected for the position because she did not meet the time-in-grade requirements. Similarly, Seward did not indicate on her application for another grade six position as a program support assistant that she was using her veteran's status, and, in February of 2000, she was rejected for that position because she did not meet the time-in-grade requirements.

In March of 2000, Seward applied for a personnel management specialist position that was

listed as a grade nine or eleven and required one year in grade seven. Seward had seven months of

experience in grade five at that point. With her application, Seward attached a hand-written note that

stated, "I am applying under the conditions set forth in the Vet Guide dated 10-25-99." Seward also

attached a page of the VetGuide[2] that explains the VA's authority under federal law to use veteran's

status to give a noncompetitive temporary appointment to any veteran. Seward was not selected for

the personnel management specialist position. The VA had an internal data sheet showing which

of the applicants were eligible for that position; on that sheet, Seward's name was listed under the

heading "ineligible—did not submit required documentation."

More than a year after Seward was rejected for the position of personnel management

specialist, several VA employees were able to use their veteran's status to apply for merit-promotion

positions. After leaving military service, Bryan Williams was hired on a thirty-day appointment as

a grade five personnel clerk in July of 2000. Williams then applied for a grade seven human

resources specialist position on May 29, 2001. Williams did not meet the time-in-grade

requirements for the position, but was selected for the position after applying pursuant to his

veteran's status. Anne Marie Baker, a female, also applied pursuant to her veteran's status and was

selected as a human resources specialist. Williams became a grade nine in October of 2002, and a

grade eleven in October of 2003.

Stephen Pettit applied as an outside applicant for a position as a grade five program support

assistant using his veteran's status and was hired in August of 2002. Shortly thereafter, Pettit used

his veteran's status to apply for a merit-promotion position as a grade six support assistant and was

---

[2] The Office of Personnel Management posts the VetGuide on the internet as a resource for veterans. The current version of the VetGuide can be found at http://www.opm.gov/veterans/html/vetguide.asp.

selected for that position in November of 2002.  A grade seven specialist trainee position then opened up for which Pettit was interested in applying.  He was told, however, that he could not use his veteran's status to apply because the position was an advancement program for VA employees and was restricted solely to VA employees who met the time-in-grade requirements.  A few months thereafter, another specialist trainee opening was announced.  Pettit asked a staffing assistant, "I can't do this one either because of my time in grade, correct?"  The staffing assistant responded, "Correct."  Pettit then went to Daniel Peterson, the chief of human resources at the VA.  Peterson told Pettit that he could use his veteran's status to apply and anyone who told him otherwise was in error.  To correct the error, Pettit was allowed to apply after the closing date of the position but before any decision to hire had been made.  Pettit was selected for that position in February of 2003.

Seward filed an EEO complaint on May 1, 2003, alleging that she was discriminated against on the basis of her sex because she was not able to use her veteran's status to more quickly qualify for higher-level jobs.  An administrative hearing was held in November of 2004 concerning Seward's complaint.  On December 13, 2004, the administrative judge issued his decision in favor of the VA.  Seward appealed the administrative judge's opinion; his decision was affirmed on March 10, 2005.  Seward's request for reconsideration was denied on September 9, 2005, and Seward filed suit on October 6, 2005, after exhausting her administrative remedies.

### III.

Seward alleges that she was unlawfully discriminated against on account of her sex by the VA because, unlike the males employed by the VA, she was not allowed to use her veteran's status to apply for higher-graded jobs.  As a consequence, Seward alleges that she was not promoted as fast as she would have been had the discrimination not occurred.  The EEO Officer in his letter to Seward identified four positions for which Seward had applied that could possibly serve as a basis for her

claim: a grade five position as a medical records tech, a grade nine or eleven position as a personnel management specialist, and two grade six positions as a program support assistant. The medical records tech position cannot support Seward's claim because she was offered the position but declined it. Of the other three positions, only one, the personnel management specialist position, can serve as a basis for her claim because that was the only position that Seward actually attempted to apply for using her veteran's status. While Seward was rejected for both of the program support assistant positions, in neither of her applications for those positions did she indicate that she was applying using her veteran's status.[3] The VA could not therefore have denied her the use of her veteran's status in applying for those two positions. On Seward's application for the specialist position, on the other hand, Seward did indicate—in the form of a hand-written note—that she intended to apply using her veteran's status.

Seward does not present any direct evidence that she was discriminated against on account of her sex when the VA rejected her attempt to use her veteran's status in applying for the specialist position. The Court must therefore apply the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). Under that framework a plaintiff must first make out a prima facie case by showing that (1) she was a member of a protected group; (2) she was qualified to perform her job; (3) she suffered an adverse employment action; and (4) she was treated differently from similarly situated males. *Tenge v. Phillips Modern AG Co.*, 446 F.3d 903, 910 (8th Cir. 2006). "If a plaintiff can make out a prima facie case, the employer must then articulate a legitimate nondiscriminatory reason for its actions, and then it falls to the employee

---

[3] While Seward was told by Dunlap that she could not use her veteran's status to apply for merit-promotion positions within the VA, there is no evidence that Dunlap spoke as the final authority for the VA on this matter. Indeed, the experience of Pettit shows that, as a staffing assistant, she did not have such authority.

to demonstrate that the reason was simply a pretext for discrimination." *Id*.

Assuming that Seward has presented a prima facie case, Nicholson has articulated a legitimate, nondiscriminatory reason for rejecting Seward's application for the specialist position. According to an internal VA data sheet, Seward was deemed ineligible to apply for the position because she did not submit required documentation in her application.  Not submitting required documentation with an application is a legitimate, nondiscriminatory reason for rejecting a person's application for a promotion. *Cf. Ross v. Kansas City Power & Light Co.*, 293 F.3d 1041, 1046 (8th Cir. 2002) (employer's reason for not promoting plaintiff was that plaintiff did not supplement his application with required proof of meeting coursework requirements for the job).

Seward has the burden to produce evidence sufficient to create a genuine issue of material fact regarding whether Nicholson's proffered nondiscriminatory reason is mere pretext for intentional discrimination. *Pope v. ESA Serv., Inc.*, 406 F.3d 1001, 1007 (8th Cir. 2005).  Seward has not met that burden.  Seward testified at the administrative hearing that she did submit the required documentation and anything in the VA's files stating otherwise must have been a mistake. While that could be evidence from which a jury might conclude that Nicholson's proffered reason was a mistake, it does not show that the reason was pretext for intentional discrimination. *See Dionne v. Shalala*, 209 F.3d 705, 710 (8th Cir. 2000) ("[T]he Secretary's mistaken failure to apply the [Indian Preference Act standards] does not amount to discrimination."); *Williams v. Potter*, 331 F. Supp. 2d 1331, 1345 (D. Kan. 2004) ("A mistake is not evidence of intentional discrimination.").

Besides her own testimony, Seward's only other evidence of pretext is the use of veteran's status by males in the VA to apply for merit-promotion positions.  As far as its utility in establishing pretext, this evidence suffers from the obvious flaw that not just males in the VA were able to use their veteran's preference to apply for merit-promotion positions.  Baker—a female—was also able

to use her veteran's status to apply for a merit-promotion position.  So far as the record shows, no

one else besides Pettit, Williams, Baker, and Seward attempted to apply using veteran's status for

a merit-promotion position.[4]  Thus, even though Pettit and Williams were able to apply, the fact that

Baker was able to apply as well weighs against any factfinder concluding that Nicholson's reason

for rejecting Seward's application was pretext for sex discrimination.

Furthermore, in order for the use of veteran's status by Pettit and Williams to create a triable

issue of pretext, Seward must show that she is "similarly situated in all relevant respects" to them.

*Rodgers v. U.S. Bank, N.A.*, 417 F.3d 845, 853 (8th Cir. 2005).  Showing similarity is Seward's

burden; it is not the employer's job to prove dissimilarity.  *Lanear v. Safeway Grocery*, 843 F.2d

298, 301 (8th Cir. 1988).  Pettit and Williams applied for different positions than Seward.  Their

applications were processed more than a year later than Seward's; in the case of Pettit, two years.

For two positions Pettit and Williams applied for using veteran's status, they applied as outside

applicants—not as a VA employee like Seward when she applied for the specialist position.  Seward

has made no attempt to show why these dissimilarities are not relevant.

In addition, there is a significant difference between Pettit and Seward.  Pettit, like Seward,

was also told by a staffing assistant that he could not use his veteran's status to apply for a merit-

promotion position.  Unlike Seward, however, he went up the management chain to Peterson, who

---

[4] One of the government's exhibits lists a "Charles Hart" as having applied for a grade
five position as a program support assistant using his veteran's status.  There is no way to tell
from that exhibit whether Hart was applying as a VA employee for a merit-promotion position,
or—like Seward's initial application to the VA—was using veteran's status as an outside
applicant.  Seward in her letters to the administrative judge did mention a "Greg Hart" or "Gregg
Hart" who she alleged was able to use his veteran's status to apply for a personnel management
specialist position in December of 2002 but was ultimately rejected for that position.  Seward has
presented no evidence to this Court, however, about any Hart using veteran's status as a VA
employee to apply for merit-promotion positions.

told Pettit that he could use his veteran's status to apply. Peterson testified that he did not know that Seward had trouble using her veteran's status until after she was hired into her current position. He testified that, had he known that someone had told Seward that she could not use her veteran's status to apply for higher-graded positions, he would have done the same thing he did for Pettit and allowed Seward to apply. Because Seward did not go up the chain to Peterson, there is no telling whether she would have been allowed to apply. Hence, there can be no inference of intentional discrimination with regard to Pettit's ability to apply using his veteran's status.

As for Williams, his use of veteran's status to apply for a merit-promotion position coincided with the use of veteran's status by Baker—a female—for the same position. The record does not show why Baker and Williams could use their veteran's status to apply when Seward apparently could not. However, no reasonable factfinder could infer intentional discrimination on the basis of sex from Williams's use of his veteran's status.

The administrative law judge found that confusion abounded on all levels of the VA's human resources department concerning the use of veteran's status by VA employees when applying for merit-promotion positions. Specifically, he found that there was confusion within human resources in 1999 and 2000 regarding the use of veteran's status, and that confusion—not discrimination—was the reason for Seward's inability to use her veteran's status in applying to merit-promotion positions. Some of the evidence submitted to this Court certainly supports that view; Seward herself testified that she and everyone else in human resources were trained that VA employees could not use their veteran's status when applying for merit-promotion positions. Regardless of whether confusion in human resources was or was not the cause of the rejection of Seward's application for the specialist position, however, there is no evidence that the cause was unlawful discrimination. "[T]he employment discrimination laws have not vested in the federal courts the authority to sit as super-

personnel departments reviewing the wisdom or fairness of the business judgments made by employers, except to the extent those judgments involve intentional discrimination." *Grabovac v. Allstate Ins. Co.*, 426 F.3d 951, 955 (8th Cir. 2005) (quoting *Hutson v. McDonnell Douglas Corp.*, 63 F.3d 771, 781 (8th Cir. 1995); *see also Nida v. Echols*, 31 F. Supp. 2d 1358, 1373 (N.D. Ga. 1998) ("[E]ven if an employer's employment decision was based on inaccurate information or mistaken judgment or was just plain unfair, that employer is not liable under federal discrimination laws unless the plaintiff introduces evidence from which one could infer an intention to discriminate on the forbidden ground by the employer.").  Seward has not presented any evidence from which a trier of fact could reasonably infer that the VA's reason for rejecting Seward's application for the specialist position was a pretext for intentional discrimination.  Nicholson's motion for summary judgment is therefore granted.

### CONCLUSION

For the foregoing reasons, Nicholson's motion for summary judgment is GRANTED. Document #40.

IT IS SO ORDERED this 4th day of August, 2006.

_____

J. LEON HOLMES
UNITED STATES DISTRICT JUDGE